# UNITED STATES SUPREME COURT.

THE OGDENSBURG & LAKE CHAMPLAIN RAILROAD COMPANY, plaintiff in error, agt. JEFFERSON PRATT and HARRISON G. BRIGHAM.

*Power of a railroad company to contract as a common carrier to carry freight through another state, and beyond its own terminus.*

A railroad company has the power and the right to contract, as a common carrier, to transport freight through another state over another railroad, and beyond its own terminus.

Where the owners of the property transported knew that the car in which it was put was defective and unsuitable, they did not thereby assume the risk of such defects, nor was the company relieved from responsibility for the same.

And *it seems*, that if the company was negligent in furnishing cars it would not have been relieved from responsibility, although there was an agreement that it should not be liable therefor.

*Washington, June,* 1875.

IN ERROR to the circuit court for the district of Massachusetts.

Mr. justice HUNT delivered the opinion of the court, as follows:

This is an action on the case originally begun in the superior court of the commonwealth of Massachusetts, by Pratt and Brigham against the Ogdensburg and Lake Champlain Railroad Company, a corporation established under the laws of New York, and against the trustees and managers of the Vermont Central and the Vermont and Canada railroad companies. The action was brought to recover the value of sundry horses killed and injured by fire, while being trans-

Ogdensburg & Lake Champlain R. R. Co. agt. Pratt.

ported, from Potsdam, in New York, to Boston, and when upon the road of the Vermont Central Railroad Company. A verdict was found in the superior court for the plaintiffs, which was set aside, and a new trial was ordered by the supreme court of Massachusetts, upon grounds not now presented (*Pratt* agt. *The Ogdensburg and Lake Champlain Railroad Company*, 102 *Mass.*, 557). Thereupon, the case was removed by the defendants to the circuit court of the United States, and a new declaration filed. At the trial in the circuit court the jury found a verdict against the Ogdensburg and Lake Champlain Railroad Company for the sum of $3,919.17, and found a verdict in favor of the other defendants. Judgment was entered upon this verdict, to which the present writ of error is brought. Nine causes of error are assigned in the brief of the plaintiffs. They present four separate principles, and the questions may be thus stated:

*First.* Had the Ogdensburg and Lake Champlain Railroad Company power or right to contract, as a common carrier, to transport the horses to Boston over another railroad, and beyond its own terminus?

*Second.* Was there competent evidence given on the trial that the company did so contract in relation to the horses in question?

*Third.* Did the plaintiffs, by putting their horses in a car which they knew was defective and unsuitable, thereby assume the risk of such defects, and relieve the company from responsibility for the same?

*Fourth.* Was there error in admitting in evidence the waybill made and forwarded with the property by the defendants, or in allowing the witness to state for whom the station agent assumed to act?

*First.* As to the power of a railroad company to contract as a common carrier for the transportation of property beyond the terminus of its own road, the distinction between the liability of a carrier in carrying goods upon its own line and in forwarding them where the duty to carry is at an end, is

well defined.    In the language of Mr. justice DAVIS, in *Rail-road Company* agt. *Manufacturing Company* (16 *Wall.*, 324) : " It is the duty of the carrier, in the absence of any special contract, to carry safely to the end of his line, and to deliver to the next carrier in the route beyond."  What constitutes a sufficient delivery to the succeeding carrier is often a difficult question, but we have no occasion to embarrass ourselves with it here.    The fair result of the American cases limits the carrier's liability as such, when no special contract is made, to his own line, although there are cases which hold the liability as continuing the same throughout the whole route ; and such is the English doctrine.    A discussion on this point is unnecessary, as the judge, on the trial, held the rule as we have stated it, and as was most favorable to the defendants. He charged the jury that the defendants were only liable upon a contract, to be proved that they had assumed a liability beyond that imposed by law.    The defendants were an incorporation, organized under the general railroad law of the state of New York.    They possessed the powers given to corporations generally, and were subject to the corresponding liabilities (*Laws* 1848, *p.* 221 ; *Laws* 1850, *p.* 211).    Assuming the case to stand upon the general principles applicable to the question, the doctrine that a railroad company may subject itself to the obligations of a carrier beyond its own line has been distinctly held by the state of New York, where this contract was made ; in the state of Massachusetts, where its performance was to be completed, and in the state of Vermont, where the alleged injury occurred (*Bissell* agt. *Michigan R. R.*, 22 *N. Y. R.*, 258 ; *Buffett* agt. *Troy and Boston R. R.*, 40 *N. Y.*, 168 ; *Root* agt. *Great W. R. R.*, 45 *N. Y.*, 524 ; *Burtis* agt. *Buff. and S. L. R.*, 24 *id.*, 269 ; *Hill Manufacturing Company* agt. *B. S. L. R. R. Co.*, 104 *Mass.*, 122 ; *Feital* agt. *Middlesex R. R.*, 109 *id.*, 398 ; *Noyes* agt. *Rutland and B. R. R. Co.*, 27 *Vt. R.*, 110 ; *Morse* agt. *Brainard*, 41 *Vt. R. ; Railroad Company* agt. *Transportation Company*, 16 *Wall.*, 324 ; *Evansville and*

*Crawfordsville R. R. Co.* agt. *Androscoggin Mills*). In the case of *Burtis* agt. *Buff.* (*supra*), it was held that this principle applied to connecting roads extending beyond the limits of the state. The single exception to this holding, so far as we are aware, is the state of Connecticut, where the contrary has been held by its supreme court (*Converse* agt. *N. and N. Y. Tran. Co.*, 33 *Conn. R.*, 166; 22 *id.*, 502). This case, however, does not stand on the general principle only. By the statutes of New York (*Stat.* 1847, 299, *section* 9; 2 *R. S.* [*5th ed.*], 693, *section* 67), it is enacted as follows: "Any railroad company receiving freight for transportation shall be entitled to the same rights and subject to the same responsibilities as common carriers. Whenever two or more railroad companies are connected together, any company owning either of said roads receiving freight to be transported to any place on the line of either of said roads so connected shall be liable as common carriers for the delivery of such freight at such place. In case any such company shall become liable to pay any sum by reason of the neglect of any other company or companies, the company paying such sum may collect the same of the company by whose neglect it became so liable." This statute is declared by RAPALLO, J., in *Root* agt. *Great Western* (*supra*), to be declaratory, merely.

We do not see that there is room to doubt the power of the company to make the contract in question.

The second question was answered in the affirmative.

The third question was answered in the negative, and it is said that it might have been charged further, that if the company was negligent in furnishing cars, it would not have been relieved from responsibility, although there was an agreement that it should not be liable therefor.

The fourth question was answered in the affirmative.